UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
KATHLEEN STANCATI,

                        Plaintiff,

    -against-                       MEMORANDUM & ORDER
                                                 14-CV-2694(JS)(ARL)
THE COUNTY OF NASSAU; MICHAEL J.
SPOSATO, individually and as the
Sheriff of the County of Nassau;
THE NASSAU COUNTY SHERIFF'S
DEPARTMENT; DEPUTY SHERIFF GOREY;
and JOHN DOES 1-10,

                        Defendants.
----------------------------------------X
APPEARANCES
For Plaintiff:       Scott Lockwood, Esq.
                   1476 Deer Park Avenue, Suite 3
                   North Babylon, NY 11703

For Defendants:     Andrew Reginald Scott, Esq.
                   Nassau County Attorney's Office
                   1 West Street
                   Mineola, NY 11501

SEYBERT, District Judge:

        Plaintiff Kathleen Stancati ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983 against defendants Nassau County (the "County"); the County Sheriff, Michael J. Sposato ("Sheriff Sposato"); and Deputy Sheriff Gorey (collectively, "Defendants"), asserting a procedural due process claim under the Fourteenth Amendment of the United States Constitution and a conversion claim under New York state common law.[1] Defendants move

---

[1] Plaintiff also included the Nassau County Sheriff's Department as a defendant, but has since consented to its dismissal from

to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket Entry 5.) For the following reasons, Defendants' motion to dismiss is GRANTED.

BACKGROUND[2]

The factual allegations of the Complaint are extremely sparse in detail, but the gist of Plaintiff's claims is relatively straightforward. Plaintiff contends that the Nassau County Sheriff's Department mistakenly seized her personal property while executing a state court warrant of eviction and judgment entered against a third party.[3] (Compl. ¶¶ 8, 14-16.) The Sheriff's Department subsequently sold Plaintiff's property at auction even though Plaintiff notified the Sheriff's Department that she was the true owner of the property prior to the auction. (Compl. ¶¶ 18-19.)

---

this action. (See Pl.'s Opp. Br., Docket Entry 9, at 2.); see also Melendez v. Nassau Cnty., No. 10-CV-2516, 2010 WL 3748743, at *5 (E.D.N.Y. Sept. 17, 2010) (dismissing Section 1983 claims against the Nassau County Sheriff's Department because "[u]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued" (internal quotation marks and citation omitted)).

[2] The following facts are taken from the Complaint and are presumed to be true for the purposes of this Memorandum and Order.

[3] The Complaint does not identify the property other than to allege that it was personal property.

Plaintiff then commenced this action on April 30, 2014 pursuant to 42 U.S.C. § 1983. She claims that the sale of her property following notice that she was the true owner violated her right to procedural due process under the Fourteenth Amendment. (Compl. ¶ 24.) Plaintiff seeks to hold Sheriff Sposato and Deputy Sheriff Gorey liable in their official and individual capacities. (Compl. ¶¶ 9, 12.) Plaintiff appears to assert municipal liability against the County based allegations that the Sheriff Department (1) does not have "proper procedures . . . to determine ownership claims to property following a seizure by the Sheriff under a Judgment and Warrant of Eviction" and (2) maintains a policy "to sell all property seized by the Sheriff under a Judgment and Warrant of Eviction." (Compl. ¶¶ 21-22.) Plaintiff also seeks to hold Defendants liable for conversion under New York state common law for having sold her property. (Compl. ¶¶ 26-32.)

On July 8, 2014, Defendants moved to dismiss the Complaint for failure to state a claim. (Docket Entry 5.) This motion is currently pending before the Court.

## DISCUSSION

The Court will first set forth the applicable legal standard before turning to Defendants' motion more specifically.

I. Legal Standard

In deciding a Rule 12(b)(6) motion to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo

working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); accord Harris v. Mills, 572 F.3d 66, 71–72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; accord Harris, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

II. Procedural Due Process

As noted, Plaintiff brings her procedural due process claim pursuant to 42 U.S.C. § 1983, which states:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must "'allege that (1) the challenged conduct was attributable at

4

least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States.'" Rae v. Cnty. of Suffolk, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010) (quoting Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999)).

Defendants argue that: (1) Plaintiff fails to state a claim under Section 1983 against Sheriff Sposato because the Complaint does not allege Sheriff Sposato's personal involvement in the alleged constitutional deprivation, (Defs.' Br., Docket Entry 7, at 6-8); and (2) Sheriff Sposato and Deputy Sheriff Gorey are entitled to absolute quasi-judicial immunity, (Defs.' Br. at 9-11). As discussed below, the Court agrees that the Complaint fails to adequately allege Sheriff Sposato's personal involvement in the alleged deprivation of Plaintiff's due process rights, thus requiring dismissal of any claims against him in his individual capacity. Additionally, although Sheriff Sposato and Deputy Sheriff Gorey would not be immune from liability at this stage of the action, Defendants' immunity argument alludes to an independent basis for the dismissal of Plaintiff's procedural due process claim--i.e., that Plaintiff was not deprived of due process as a matter of law. The Court will first address Plaintiff's failure to adequately allege Sheriff Sposato's personal involvement.

## A. Personal Involvement

As an initial matter, although Defendants only move to dismiss the claim against Sheriff Sposato in his individual capacity, (see Defs.' Br. at 6-8), the Complaint actually asserts claims against both Sheriff Sposato and Deputy Sheriff Gorey in both their individual and official capacities, (see Compl. ¶¶ 9-12). Regarding the official capacity claims, it well settled that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the [governmental] entity [of which the officer is an agent]." Kentucky v. Graham, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985); accord Castanza v. Town of Brookhaven, 700 F. Supp. 2d 277, 283-84 (E.D.N.Y. 2010) ("Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." (brackets omitted) (internal quotation marks and citation omitted)). Thus, "[w]ithin the Second Circuit, where a plaintiff names both the municipal entity and an official in his or her official capacity, district courts have consistently dismissed the official capacity claims as redundant." Phillips v. Cnty. of Orange, 894 F. Supp. 2d 345, 385 (S.D.N.Y. 2012) (collecting cases). Here, because the County is named in the Complaint, the claims against Sheriff Sposato and Deputy Sheriff Gorey in their official capacities must be dismissed as duplicative and redundant. See Reid v. Nassau Cnty. Sheriff's Dep't, No. 13-CV-

6

1192, 2014 WL 4185195, at *11 (E.D.N.Y. Aug. 20, 2014) (dismissing Section 1983 claims against Sheriff Sposato in his individual capacity "as redundant to [the plaintiff's] claims against the County").

Turning to Plaintiff's individual capacity claims then, to state a claim under Section 1983 against an individual defendant, a plaintiff "must allege sufficient facts demonstrating that [the] defendant was personally involved in the alleged constitutional violation." Allen v. City of N.Y., No. 12-CV-4961, 2014 WL 4258529, at *3 (E.D.N.Y. Aug. 27, 2014); accord Moffitt v. Town of Brookfield, 950 F.2d 880, 886 (2d Cir. 1991) ("In this Circuit[,] personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks and citation omitted)). Defendants argue that the Section 1983 claim against Sheriff Sposato must be dismissed because the Complaint fails to plead any particular facts that Sheriff Sposato was actually involved in the alleged unconstitutional seizure and sale of Plaintiff's property. The Court agrees.

The Complaint alleges that Sheriff Sposato "was involved in the determination to seize, retain and auction [the] property" seized pursuant to the warrant of eviction and judgment. (Compl. ¶¶ 9, 12.) However, "a Section 1983-based complaint must . . . allege particular facts indicating that an individual

defendant was personally involved in the deprivation of the plaintiff's constitutional rights; mere 'bald assertions and conclusions of law' do not suffice." Davis v. Cnty. of Nassau, 355 F. Supp. 2d 668, 677 (E.D.N.Y. 2005) (emphasis in original) (quoting Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996)). Plaintiff's allegations simply state that Sheriff Sposato was involved in the alleged constitutional deprivation, without providing any facts indicating how he was actually involved. These allegations cannot withstand a motion to dismiss. See id. ("A complaint that essentially regurgitates the relevant 'personal involvement' standard, without offering any facts indicating that, or how, an individual defendant . . . was personally involved in a constitutional violation, cannot withstand dismissal.").

Plaintiff argues that "[i]t is [Sheriff Sposato's] failure to enact procedures [to determine the ownership of seized property] as the head policymaker for the [Sheriff's Department] which is the basis for [Plaintiff's Section 1983] claim." (Pl.'s Opp. Br. at 3.) It is true that a supervisory official who was not personally involved in the alleged constitutional violation may still be held liable if he "[1] created a policy or custom under which the unconstitutional practice[ ] occurred, or [2] allowed the continuance of such a policy or custom." Colon v.

Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).[4] Here, the Complaint alleges that Defendants failed to establish "proper procedures . . . to determine ownership claims to property following a seizure by the Sheriff under a Judgment and Warrant of Eviction" and that they had a policy "to sell all property seized by the Sheriff under a Judgment and Warrant of Eviction." (Compl. ¶¶ 21-22.) However, these allegations fail to state a claim for supervisory liability against Sheriff Sposato because the Complaint does not allege any facts, other than Plaintiff's isolated constitutional violation, that create an inference that the Sheriff's Department maintained a policy of selling property pursuant to a judgment with knowledge that the property belonged to someone other than the judgment debtor. See Pierce v. Chautauqua Cnty., No. 06-CV-0644, 2007 WL 2902954, at *4 (W.D.N.Y. Sept. 28, 2007) (dismissing supervisory liability claim because "plaintiffs have not alleged factual evidence, outside of [the plaintiffs'] isolated incident, which would create an inference of

---

[4] In Colon, the Second Circuit actually listed five ways that a plaintiff can establish supervisory liability, including failure to remedy a wrong after being informed of the violation, grossly negligent supervision of subordinates who committed the wrongful acts, and deliberate indifference. 58 F.3d at 873. However, the "continuing vitality" of these additional methods has "engendered conflict within our Circuit" due to the Supreme Court's decision in Iqbal. Reynolds v. Barrett, 685 F.3d 193, 205 n.14 (2d Cir. 2012). The undersigned has previously concluded that only personal involvement and a custom or practice survive as viable bases for supervisory liability. See Butler v. Suffolk Cnty., 289 F.R.D. 80, 95 n.8 (E.D.N.Y. 2013).

a custom or policy created by [the sheriff]"). Accordingly, Plaintiff's allegations are conclusory and only attempt to hold Sheriff Sposato liable on a theory of respondeat superior, which, under Section 1983, is not a viable theory of liability. Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003) ("Supervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on respondeat superior." (brackets omitted) (internal quotation marks and citation omitted)). Plaintiff's individual capacity claim against Deputy Sheriff Gorey fails for the same reasons.[5]

B. Quasi-Judicial Immunity

Defendants also argue that Sheriff Sposato and Deputy Sheriff Gorey are entitled to absolute quasi-judicial immunity because they were simply executing a facially valid court judgment and warrant of eviction when they seized and sold Plaintiff's property. (Defs.' Br. at 9-11.) Assuming, arguendo, that Plaintiff adequately alleged the personal involvement of Sheriff Sposato and Deputy Sheriff Gorey, they would not be entitled to

---

[5] Defendants' memorandum of law does not mention the individual capacity claim against Deputy Sheriff Gorey. Although this Court would not normally sua sponte grant relief that a party has not requested, the factual allegations against Sheriff Sposato and Deputy Sheriff Gorey are identical. Thus, the resolution of the individual capacity claim against Sheriff Sposato applies equally to the individual capacity claim against Deputy Sheriff Gorey.

immunity at this stage of the action. However, as the Court noted, Defendants' immunity argument alludes to an independent basis for dismissing Plaintiff's procedural due process claim in its entirety--that is, that Plaintiff was not deprived of due process. The Court will first address why Sheriff Sposato and Deputy Sheriff Gorey are not immune from liability before explaining why Plaintiff cannot plausibly allege a deprivation of due process.

"Judges enjoy absolute immunity from personal liability for acts committed within their judicial jurisdiction." Young v. Selsky, 41 F.3d 47, 51 (2d Cir. 1994). Relevant here, "some officials who are not judges but who perform functions closely associated with the judicial process have also been accorded such immunity." Dorman v. Higgins, 821 F.2d 133, 137 (2d Cir. 1987) (internal quotation marks and citation omitted). Because the execution of a court order is integral to the judicial process, district courts within this Circuit have held that sheriffs executing facially valid court orders are entitled to absolute quasi-judicial immunity. See, e.g., Caporicci v. Nassau Cnty. Police Dep't, No. 05-CV-5764, 2007 WL 764535, at *7 (E.D.N.Y. Mar. 6, 2007) (dismissing Section 1983 claims on the basis of quasi-judicial immunity because the sheriff "[was] sought to be held liable based upon his execution of a facially valid warrant"); Maldonado v. N.Y. Cnty. Sheriff, No. 05-CV-8377, 2006 WL 2588911, at *5 (S.D.N.Y. Sept. 6, 2006) ("In this case, the [sheriffs] were

11

protected by absolute quasi-judicial immunity because they were executing the New York State Supreme Court's facially valid order of eviction, in accordance with their duty to carry out mandates of the court.").

However, just because a sheriff is executing a facially valid court order or judgment, does not necessarily mean that he is automatically entitled to immunity for all conduct he engages in while carrying out the order or judgment. Rather, an officer is protected from liability only "for any proper act done in its execution." Caporicci, 2007 WL 764535, at *7 (internal quotation marks and citation omitted). It is only "persons who faithfully execute valid court orders [who] are absolutely immune from liability for damages in actions challenging conduct authorized by the order." Maldonado, 2006 WL 2588911, at *5 (emphasis added); see also Falk v. Perez, 973 F. Supp. 2d 850, 858 (N.D. Ill. 2013) ("[W]hen the conduct directly challenged is the manner in which the judge's decision is enforced[,] the law enforcement officer's fidelity to the specific orders of the judge marks the boundary for labeling the act 'quasi-judicial.'" (ellipsis and brackets omitted) (quoting Martin v. Bd. of Cnty. Comm'rs, 909 F.2d 402, 404-05 (10th Cir. 1990)).

Here, Plaintiff alleges that her property was sold after she provided proof that she was the true owner. Thus, if Sheriff Sposato and Deputy Sheriff Gorey were involved in the sale of

12

Plaintiff's property, they would have stepped outside of the authority granted to them under the judgment and warrant of eviction, which would have permitted them to seize and sell only the judgment debtor's property. See Teddy's Drive In, Inc. v. Cohen, 47 N.Y.2d 79, 82, 390 N.E.2d 290, 291, 416 N.Y.S.2d 782, 783 (1979) (finding that sheriff "stepped outside of the scope of his authority" when he "had property auctioned with notice that the true owner of the property was someone other than the delinquent taxpayer"). Thus, Sheriff Sposato and Deputy Sheriff Gorey would not be entitled to qualified immunity at this juncture.

Nonetheless, Defendants' argument highlights an independent basis for the dismissal of Plaintiff's procedural due process claim. Specifically, Defendants argue that Sheriff Sposato and Deputy Sheriff Gorey are entitled to qualified immunity because "it is for a Court, and not the Sheriff, to rule on [Plaintiff's] claim of ownership." (Defs.' Reply Br., Docket Entry 10, at 3.) In this regard, Defendants cite to Section 5239 of the New York Civil Practice Law and Rules, which provides that "[p]rior to the application of property or debt by a sheriff or receiver to the satisfaction of a judgment, any interested person may commence a special proceeding against the judgment creditor or other person with whom a dispute exists to determine rights in the property or debt." N.Y. C.P.L.R. § 5239. However, the availability of a legal avenue to challenge the alleged unconstitutional conduct has

13

nothing to do with qualified immunity, as Defendants argue. Rather, it goes to whether Plaintiff was actually deprived of due process, and the issue is much more complex than Defendants indicate.

The Due Process Clause of the Fourteenth Amendment provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "The Due Process Clause does not protect against all deprivations of constitutionally protected interests in life, liberty, or property, 'only against deprivations without due process of law.'" Rivera-Powell v. N.Y. City Bd. of Elections, 470 F.3d 458, 464 (2d Cir. 2006) (quoting Parratt v. Taylor, 451 U.S. 527, 537, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327, 330–31, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)). "'[T]o determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate.'" Id. (quoting Zinermon v. Burch, 494 U.S. 113, 126, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990)).

As a general rule, "due process requires that a state afford persons some kind of hearing prior to depriving them of a liberty or property interest." DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003) (internal citations and quotation marks omitted). That said, "the Supreme Court has distinguished between

14

(a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." Hellenic Am. Neighborhood Action Comm. v. City of N.Y., 101 F.3d 877, 880 (2d Cir. 1996) ("HANAC") (citing Hudson v. Palmer, 468 U.S. 517, 532, 104 S. Ct. 3194, 3203, 82 L. Ed. 2d 393 (1984); Parratt, 451 U.S. at 541, 101 S. Ct. at 1916). "Where a deprivation at the hands of a government actor is 'random and unauthorized,' hence rendering it impossible for the government to provide a pre-deprivation hearing, due process requires only a post-deprivation proceeding." DiBlasio, 344 F.3d at 302 (citing Parratt, 451 U.S. at 541, 101 S. Ct. at 1916; Hudson, 468 U.S. at 534, 104 S. Ct. at 3203). On the other hand, when the deprivation occurs pursuant to an "established state procedure," "'the availability of post-deprivation procedures will not, ipso facto, satisfy due process.'" Rivera-Powell, 470 F.3d at 465 (quoting HANAC, 101 F.3d at 880).

The Second Circuit has noted that "[t]he distinction between random and unauthorized conduct and established state procedures . . . is not clear-cut." Rivera-Powell, 470 F.3d at 465. For example, "the acts of high-ranking officials who are ultimate decision-maker[s] and have final authority over significant matters, even if those acts are contrary to law, should not be considered random and unauthorized conduct for purposes of a procedural due process analysis." Id. at 465 (alteration in

original) (internal quotation marks and citation omitted). Additionally, some district courts have held that conduct taken pursuant to the official policy of a sheriff's office is not "random and unauthorized." See, e.g., Vaher v. Town of Orangetown, 916 F. Supp. 2d 404, 437 (S.D.N.Y. 2013); Poche v. Gautreaux, 973 F. Supp. 2d 658, 670 (M.D. La. 2013); Von Grabe v. Fleming, No. 05-CV-1023, 2006 WL 2640640, at *10 (M.D. Fla. Sept. 14, 2006).

Here, the Court has already determined that Plaintiff has failed to adequately allege a policy of the Sheriff's Department with respect to the disposition of seized property. Nonetheless, whether Plaintiff's claim is characterized as challenging a random and unauthorized act or an established state procedure, Plaintiff's allegations fail to state a procedural due process claim as a matter of law. To the extent that the alleged deprivation was random and unauthorized, New York state law provides an adequate post-deprivation remedy in the form of a state law cause of action for conversion, which would fully compensate Plaintiff for her alleged property loss. See Fredricks v. City of N.Y., No. 12-CV-3734, 2014 WL 3875181, at *8 (S.D.N.Y. July 23, 2014) ("Where loss of property was random and unauthorized, courts have found that New York provides an adequate postdeprivation remedy in the form of state law causes of action for negligence, replevin, or conversion." (collecting cases)); Teddy's Drive In, 47 N.Y.2d at 82, 390 N.E.2d at 291, 416 N.Y.S.2d at 783 (1979)

16

(holding that sheriff was "personally liable to [the plaintiff] in conversion" for having sold the plaintiff's property at auction "with notice that the true owner of the property was someone other than the delinquent taxpayer").

To the extent that Plaintiff's deprivation was the result of an established procedure of the Sheriff's Department to sell property with notice that the property belonged to someone other than the judgment debtor, the Court would simply evaluate what process was due. Rivera-Powell, 470 F.3d at 466. To do this, the Court balances the following three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. (quoting Mathews v. Eldridge, 424 U.S. 319, 335, 96 S. Ct. 893, 903, 47 L. Ed. 2d 18 (1976)). There is no dispute that Plaintiff received notice that her property would be sold, and Plaintiff could have availed herself of a pre-deprivation hearing under the New York Civil Practice Law and Rules. Specifically, Section 5239 provides that "[p]rior to the application of property or debt by a sheriff or receiver to the satisfaction of a judgment, any interested person may commence a special proceeding against

17

the judgment creditor or other person with whom a dispute exists to determine rights in the property or debt." N.Y. C.P.L.R. § 5239. Section 5239 is "an all inclusive tool for the settlement of almost any problem that may arise in connection with the enforcement of money judgments." Herman v. Siegmund, 69 A.D.2d 871, 872, 415 N.Y.S.2d 681, 682 (2d Dep't 1979). Plaintiff only argues that as a non-party to the judgment, she would not be able to challenge its enforcement. (Pl.'s Op.. Br. at 7.) However, Section 5239 permits "any interested person" to commence a proceeding against "any . . . other person," N.Y. C.P.L.R. § 5239 (emphasis added), and non-debtors have successfully prevented enforcement of a judgment through Section 5239 proceedings, see, e.g., Nejeidi v. Republic Nat. Bank of N.Y., 227 A.D.2d 392, 393, 642 N.Y.S.2d 61, 62 (2d Dep't 1996) (noting that restraining notice was vacated in CPLR 5239 proceeding brought by non-debtor accountholders against bank for negligently restraining accounts). Accordingly, Plaintiff cannot state a claim that her rights to due process were violated because a full and adequate proceeding was available to her prior to the sale of her property under Section 5239. Accordingly, Defendants' motion to dismiss is GRANTED.

III. Leave to Replead

The Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." Hayden v. Cnty. of Nassau, 180 F.3d 42, 53 (2d

Cir. 1999); see also FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). "However, a district court has the discretion to deny leave to amend where there is no indication from a liberal reading of the complaint that a valid claim might be stated." Perri v. Bloomberg, No. 11-CV-2646, 2012 WL 3307013, at *4 (E.D.N.Y. Aug. 13, 2012) (citing Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010)). Here, Plaintiff cannot plead a plausible procedural due process claim as a matter of law. Accordingly, the Court will not grant Plaintiff leave to replead and her procedural due process claim under Section 1983 is DISMISSED WITH PREJUDICE. The Court declines to exercise supplemental jurisdiction over Plaintiff's conversion claim under New York state law, which is DISMISSED WITHOUT PREJUDICE to refiling in state court.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Docket Entry 5) is GRANTED. Plaintiff's procedural due process claim under Section 1983 is DISMISSED WITH PREJUDICE. The Court declines to exercise supplemental jurisdiction over Plaintiff's conversion claim under New York state law and this claim is DISMISSED WITHOUT PREJUDICE. The Clerk of the Court is directed to mark this matter CLOSED.

SO ORDERED.

/S/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: March _31_, 2015
Central Islip, NY